UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:19-CV-00125-TBR

JACKSON PURCHASE ENERGY CORP., *et al*.                                 PLAINTIFFS

v.

MARSHALL COUNTY, KENTUCKY, *et al*.                                      DEFENDANTS

MEMORANDUM OPINION & ORDER

Before the Court is Plaintiffs' Motion for Summary Judgment on the Phase One Claims. [DN 19]. Defendants responded, [DN 20], and plaintiffs replied, [DN 21]. This matter is ripe for adjudication. For the reasons stated below, the motion is DENIED.

## I.   Background

Jackson Purchase Energy Corporation ("JPE") and West Kentucky Rural Electric Cooperative Corporation ("WKRECC") brought this action against Marshall County, Kentucky, the Marshall County Fiscal Court, the Marshall County Judge Executive, Kevin Neal, and three Marshall County Commissioners—Justin Lamb, Kevin Spraggs, and Monti Collins—complaining of Defendants' attempt to "force [Plaintiffs] to collect a local 911 emergency system fee on Defendants' behalf." [DN 10 at 1; DN 19 at 1]. Specifically, Plaintiffs challenge an ordinance passed by the Marshall County Fiscal Court that would require the plaintiffs to collect a fee from their electric customers and remit the fee to the Marshall County local government for use in funding the county's 911 emergency services. [DN 10]. The Court bifurcated the litigation on the grounds that some of plaintiffs' claims—Counts 6, 7, 8, 10, 11, and 12 of the Amended Complaint (the "Phase One Claims")—may potentially be decided as a matter of law without discovery. [DN 15]. Plaintiffs argue in the Phase One Claims that the ordinance at issue should be invalidated

1

pursuant to multiple Kentucky statutes and that the ordinance is vague and uncertain. After the Court bifurcated the litigation, the Plaintiffs filed the instant motion, a Motion for Summary Judgment on the Phase One Claims. [DN 19].

## II.    Standards

"Summary judgment is appropriate where the movant demonstrates that there is 'no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Clabo v. Johnson & Johnson Health Care Sys., Inc.*, 982 F.3d 989, 992 (6th Cir. 2020) (citing Fed. R. Civ. P. 56(a)). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The facts material to Plaintiffs' motion here are not disputed; the parties only dispute construction or application of the law.

## III.    Discussion

Plaintiffs in this action challenge a Marshall County Fiscal Court ordinance requiring the county's electricity providers to collect fees from their customers in Marshall County. The fees would go toward funding Marshall County's 911 emergency services. Plaintiffs, electricity providers in Marshall County, allege that the ordinance "violates the United States Constitution, the Kentucky Constitution, is unenforceable due to being vague and uncertain, is *ultra vires*, and impermissibly infringes upon the regulatory authority of the Tennessee Valley Authority and the Kentucky Public Service Commission." [DN 10 at 1-2]. Plaintiffs move for summary judgment on the Phase One Claims—Counts 6, 7, 8, 10, 11, and 12 of the Amended Complaint. [DN 19 at 1].

In the Phase One Claims, Plaintiffs contend that the ordinance violates several Kentucky statutes and that the ordinance is vague and uncertain. [DN 10 at 28-36]. In their motion for summary judgment, Plaintiffs argue for constructions of the relevant Kentucky statutes that would

2

invalidate the ordinance. [DN 19]. Plaintiffs also argue for summary judgment on the claim that the ordinance is vague and uncertain. *Id.* at 31-33. In response, Defendants argue that the Court should abstain from considering Plaintiffs' claims pursuant to *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943) and *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 500 (1941). [DN 20 at 9-11]. Alternatively, Defendants argue for applications of the Kentucky statutes that would sustain the ordinance. *Id.* at 11-26. Defendants also argue that the ordinance is not vague and uncertain. *Id.* First, the Court will address Defendants' abstention argument.

### a. Abstention

#### i. Arguments

In response to Plaintiffs' motion for summary judgment, Defendants argue: "The questions involved are better left to the state courts to resolve, and this Court should therefore abstain from entertaining the Utilities' claims and dismiss the Amended Complaint." [DN 20 at 9-10]. Defendants first argue for abstention under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). [DN 20 at 9-10]. Defendants cite the Supreme Court's explanation of the *Burford* doctrine in *New Orleans Public Service Inc. v. Council of City of New Orleans ("NOPSI")*, 491 U.S. 350, 361 (1989):

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*Id.* (citing *NOPSI*, 491 U.S. at 361). Defendants argue that funding 911 services is a policy problem of substantial public import, and "the validity of a particular means of funding 911 services transcends the parties to this case, indeed affecting every locality and person in the Commonwealth." *Id.* at 10. Further, defendants state, "recent [state court] judicial proceedings

3

evaluating different counties' approaches demonstrates the sufficiency of state court review of ordinances attempting to address the issue." *Id.*

Defendants next argue that abstention is warranted under *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 500 (1941). *Id.* at 10-11. Defendants state, "[t]he Phase One claims presently before the Court pose only questions of state law, turning largely on the interpretation and application of KRS 65.760 and KRS 67.083." *Id.* at 11. Therefore, Defendants argue, the Supreme Court's holding in *Pullman* that "federal courts should abstain from decision when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided" applies, and Plaintiffs' complaint should be dismissed. *Id.* at 10-11 (quoting *Haw. Housing Auth. v. Midkiff*, 467 U.S. 229, 236 (1984)).

In their reply, Plaintiffs argue that abstention is inappropriate. [DN 21 at 5-7]. *Id.* First, Plaintiffs argue that granting Defendants' request for abstention "would only serve to further delay a resolution of the parties' dispute, which is not in the best interest of Marshall County's citizens, most of whom are member-owners of the Plaintiff electric cooperatives." *Id.* at 5. Plaintiffs further contend that the Defendants agreed to the bifurcated schedule so that the Court could more promptly consider the Phase One Claims. *Id.* Asserting an abstention argument at this juncture, Plaintiffs argue, contravenes the parties' agreement to the bifurcated schedule because if the Court abstains, a state action will likely need to be filed, further delaying resolution of the dispute. *Id.*

Moreover, Plaintiffs submit that the Defendants are wrong on the merits of their abstention arguments. As to *Burford* abstention, Plaintiffs argue that *Burford* only applies when a federal court's consideration of a state law issue would interfere with a state administrative agency, and here, no Kentucky administrative agency is involved. *Id.* at 6. As to *Pullman* abstention, Plaintiffs argue that *Pullman* only applies when a federal court must consider an ambiguous state statute to

4

resolve federal constitutional claims, and here, "Plaintiffs' federal constitutional claims are completely independent of and do not require interpretation of a Kentucky statute." *Id.* at 7.

### ii. Standards

This Court has previously stated that *Burford* abstention is appropriate if "there are difficult questions of state law, issues of great public importance to the state, or [there is an issue on which] the state has special expertise." *Alexander v. Morgan*, 353 F.Supp.3d 622, 626 (W.D. Ky. 2018) (citing *Louisiana Power & Light Co. v. Thibodaux*, 360 U.S. 25, 79 (1959); *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943)). The Sixth Circuit has stated:

> *Burford* abstention is appropriate "where timely and adequate state-court review is available and (1) a case presents difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the results in the case at bar, or (2) the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*Stein v. Thomas*, 672 F. App'x 565, 571 (6th Cir. 2016) (quoting *Caudill v. Eubanks Farms, Inc.*, 301 F.3d 658, 660 (6th Cir. 2002)). Further, "*Burford* instructs federal courts to avoid hearing cases where doing so would interfere with a state's regulatory efforts." *Ky. Waterways All. v. Ky. Utils. Co.*, 905 F.3d 925, 939 (6th Cir. 2018) (citing *NOPSI*, 491 U.S. at 361). However, *Burford* abstention should not be invoked merely because a federal court is presented with a difficult question of state law. *Gray v. Bush*, 628 F.3d 779, 786 (6th Cir. 2010) (citing *Cleveland Hous. Renewal Project v. Deutsche Bank Trust Co.*, 621 F.3d 554, 565 (6th Cir. 2010)). Instead, "[t]here must be an unanswered question of state law 'whose importance transcends . . . the case then at bar.'" *Id.* (quoting *NOPSI*, 491 U.S. at 361). "While *Burford* is concerned with protecting complex state administrative processes from undue federal interference, it does not require abstention whenever there exists such a process, or even in all cases where there is a potential for conflict

with state regulatory law or policy." *Id.* (quoting *NOPSI*, 491 U.S. at 362). "The key question is whether an erroneous federal court decision could impair the state's effort to implement its policy." *Cleveland*, 621 F.3d at 562 (quoting *Saginaw Housing Comm'n v. Bannum, Inc.*, 576 F.3d 620, 626 (6th Cir. 2009)).

"In *Pullman*, the Supreme Court 'held that federal courts should abstain from decision when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided.'" *Hill v. Snyder*, 900 F.3d 260, 265 (6th Cir. 2018) (quoting *Midkiff*, 467 U.S. at 236). "The usual situation for Pullman-type abstention is where the unclear issue of state law may make it unnecessary to decide a federal constitutional question." 17A Charles Alan Wright et al., *Federal Practice and Procedure* § 4242 (3d ed. 2007). "*Pullman* abstention instructs courts to avoid exercising jurisdiction in cases involving an ambiguous state statute that may be interpreted by state courts so as to eliminate, or at least alter materially, the constitutional question raised in federal court." *Fowler v. Benson*, 924 F.3d 247 (6th Cir. 2019) (citing *Jones v. Coleman*, 848 F.3d 744, 749-50 (6th Cir. 2017)). "The primary scenario for a district court's application of *Pullman* abstention is one in which the state-law question is an unsettled issue best decided by state courts." *Jones*, 848 F.3d at 750 (citing *Harris Cnty. Comm'rs v. Moore*, 420 U.S. 77, 83-84 (1975)). However, *Pullman* abstention is not required "if the state law is clear on its face, or if its meaning has already been authoritatively decided by the state courts, or if the constitutional issue would not be avoided or changed no matter how the statute is construed." Wright et al., *supra*, § 4242. The Sixth Circuit has cautioned that "abstention is 'the exception and not the rule,'" and "district courts should engage in a thorough analysis of the state-law issue before abstaining under *Pullman*." *Jones*, 848 F.3d at 753 (quoting City *of Houston, Tex. v. Hill*, 482 U.S. 451, 467 (1987)).

6

### iii.   Discussion

First, the Court addresses Plaintiffs' arguments against abstention. Plaintiffs argue that abstention is inappropriate because it would delay resolution of the parties' dispute. [DN 21 at 5]. Plaintiffs argue that Defendants have snubbed their agreement to bifurcate the litigation by asking the Court to abstain at this juncture, and "[n]ow that additional legal fees, court resources, and time have been devoted to substantively briefing the merits of the state law claims, Defendants ask the Court not to rule on them at all." [DN 21 at 5]. Plaintiffs cite no authority to support their argument that abstention is inappropriate on grounds of delayed resolution or economic impact. However, many courts, including the Sixth Circuit, have explicitly considered the length or impact of delay that abstention may cause in deciding whether to abstain. *See Harris Cnty.*, 420 U.S. at 83 (citations omitted) ("We have repeatedly warned, however, that because of the delays inherent in the abstention process and the danger that valuable federal rights might be lost in the absence of expeditious adjudication in the federal court, abstention must be invoked only in 'special circumstances,' . . . and only upon careful consideration of the facts of each case."); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 122, n.32 (1984) (citing *Baggett v. Bullitt*, 377 U.S. 360, 378-379 (1964)) ("Waste and delay may also result from abstention, which often is called for when state law is unclear."); *Jones*, 848 F.3d at 750 ("The application of *Pullman* abstention results in significant financial and time burdens on the parties and acts almost as an exhaustion requirement, requiring the federal court plaintiff to seek an authoritative state court construction of the state-law issue before a federal court will entertain her claim.); *Trump for President, Inc., v. Boockvar*, 481 F.Supp.3d 476, 489; 499-500; 503 (W.D. Penn. 2020) (citing *Artway v. Attorney General of State of N.J.*, 81 F.3d 1235, 1270 (3d Cir. 1996). While this action has been pending for about a year and a half, it was stayed pursuant to the parties' joint motion for about nine months

7

of that time. [*See* DN 1; DN 8; DN 15]. Moreover, neither party has presented a particularly compelling need for speedy resolution. However, the Court recognizes the time and financial burdens that abstention would have on both parties. It is also notable the Defendants waited to argue for abstention in response to Plaintiffs' summary judgment motion rather than raising the issue on their own motion at the outset of the litigation, or at least at the time the amended complaint was filed. *See Hill*, 900 F.3d at 266 ("If considering *Younger* abstention was inappropriate nearly a year ago in response to an amended complaint, it is even more so now."). On balance, the Court concludes that the likely impacts of delay weigh slightly against abstention. However, this is only a factor the Court considers in making an abstention determination; it is not dispositive of the matter.

Plaintiffs also submit that the Court must exercise jurisdiction where it has jurisdiction, and because Plaintiffs have alleged federal constitutional claims, the court has jurisdiction. It is true that "[f]ederal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given to them." *Alexander*, 353 F.Supp.3d at 626 (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). "However, the Supreme Court has recognized various types of abstention, placing constitutional or prudential limits on the federal courts' exercise of jurisdiction over cases or controversies that could have been, were, or are being brought in state courts." *Id.* Thus, just because the Court has jurisdiction does not mean that it should always exercise it, even when federal constitutional claims are alleged.

Next, Plaintiffs argue that *Burford* only applies when a federal court's consideration of a state law issue would interfere with a state administrative agency, and here, no Kentucky administrative agency is involved. [DN 21 at 6]. However, in considering *Burford* abstention, "the key question is whether an erroneous federal court decision could impair the state's effort to

8

implement its policy." *Cleveland*, 621 F.3d at 562 (quoting *Saginaw Housing*, 576 F.3d at 626). Moreover, faced with a very similar argument in *Caudill*, the Sixth Circuit explicitly stated that *Burford* abstention is not limited "to situations where state administrative agencies are involved." 301 F.3d at 661-63 (collecting cases) ("Plaintiffs' arguments that *Burford* abstention is unavailable because no state *administrative* agency is involved and judicial review is not centralized in a single district court are unavailing."). Accordingly, Plaintiffs' argument that *Burford* abstention is not relevant here because no Kentucky administrative agency is involved must fail.

Finally, Plaintiffs argue that *Pullman* only applies when a federal court must consider an ambiguous state statute to resolve federal constitutional claims, and here, "Plaintiffs' federal constitutional claims are completely independent of and do not require interpretation of a Kentucky statute." *Id.* at 7. However, as stated above, abstention is appropriate where federal constitutional issues might be "mooted or presented in a different posture by a state court determination of pertinent state law." *Alexander*, 353 F.Supp.3d at 626 (citing *Pullman*, 312 U.S. 496). Here, it is apparent that if the ordinance is deemed invalid under state law, Plaintiffs' federal constitutional claims, all of which seek declaratory relief, will be moot. Therefore, Plaintiffs' argument that the federal constitutional claims alleged are "completely independent of and do not require interpretation of a Kentucky statute" fails. Because Plaintiffs' arguments do not conclusively establish that abstention is inappropriate, the Court proceeds in its analysis.

### b. Phase One Claims

As stated above, *Burford* abstention is appropriate "where timely and adequate state-court review is available and (1) a case presents *difficult questions of state law* bearing on policy problems of substantial public import whose importance transcends the results in the case at bar, or (2) the exercise of federal *review of the question* in a case and in similar cases would be

disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Stein*, 672 F. App'x at 571 (quoting *Caudill*, 301 F.3d at 660) (emphasis added). *Pullman* abstention is appropriate "where the unclear issue of state law may make it unnecessary to decide a federal constitutional question." Wright et al., *supra*, § 4242. However, *Pullman* abstention is not required "if the state law is clear on its face, or if its meaning has already been authoritatively decided by the state courts, or if the constitutional issue would not be avoided or changed no matter how the statute is construed." *Id*. Hence, to abstain under *Burford* or *Pullman*, there must at least be a difficult, unclear, or unsettled question of state law. Accordingly, the Court will consider the merits of the Phase One Claims and determine whether the state law issues are sufficiently difficult, unclear, or unsettled such that abstention is warranted.

### i.   Standards

"A federal court exercising supplemental jurisdiction over state law claims is bound to apply the law of the forum state to the same extent as if it were exercising its diversity jurisdiction." *Super Sulky, Inc. v. U.S. Trotting Ass'n*, 174 F.3d 733, 737, 741 (6th Cir. 1999) (citations omitted). Thus, Kentucky substantive law applies to the Phase One Claims. "On questions of state law, this Court is bound by the rulings of the state supreme court." *Ky. Comm. Mobile Radio Serv. Emergency Telecomms. Bd. v. TracFone Wireless, Inc.*, 712 F.3d 905, 912 (6th Cir. 2013) (citing *Bradley v. Gen. Motors Corp.*, 512 F.2d 602, 604-05 (6th Cir. 1975)). "When there is no state law construing a state statute, a federal court must predict how the state's highest court would interpret the statute." *Id.* (quoting *United States v. Simpson*, 520 F.3d 531, 535 (6th Cir. 2008)). "In the absence of any state supreme court precedent, a state's appellate court decisions are the best authority." *Id.* (citing *Simpson*, 520 F.3d at 536). "Where a state's highest court has not spoken on a precise issue, a federal court may not disregard a decision of the state appellate court on point,

unless it is convinced by other persuasive data that the highest court of the state would decide otherwise . . . [t]his rule applies regardless of whether the appellate court decision is published or unpublished." *Puckett v. Tenn. Eastman Co.*, 889 F.2d 1481, 1485 (6th Cir. 1989) (citing *Kochins v. Linden–Alimak, Inc.*, 799 F.2d 1128, 1140 (6th Cir. 1986)).

### ii.  The Ordinance

The ordinance at issue reads, in pertinent part:

<u>**ORDINANCE NO. 2019-12**</u>

AN ORDINANCE ESTABLISHING AND IMPOSING A FEE ON ELECTRIC
METERS/BILLS TO FACILITATE FUNDING FOR MARSHALL COUNTY 911 AND
PERMITTING ELECTRICAL PROVIDERS A MECHANISM TO RECEIVE REASONABLE
COMPENSATION FOR THEIR EFFORTS IN COLLECTING THE FEES

. . .

SECTION ONE

That there is hereby established, imposed, and implemented a monthly fee on active electric meters provided to occupied households and businesses in Marshall County, Kentucky, calculated at $7.00 per month per active residential and commercial electric meter. An active electric meter is defined as any electric meter that is producing revenue.

SECTION TWO

That every electricity provider in Marshall County, Kentucky shall collect the herein established fee and remit amounts collected by the end of each month to the Marshall County Treasurer. The fees received by the Marshall County Treasurer shall be accounted for and kept separate and apart from other accounts, and may only be used for those purposes as permitted by state law.

SECTION THREE

That the electricity providers shall be permitted to retain 3% of withholdings ("3% retainage") for the administration of collecting the monthly fee set forth in Section One for Marshall County 911. In the event that the 3% retainage will not fully compensate the electricity provider for collecting the fee in accordance with its normal, customary billing practices and cycles utilized to collect amount owed by its electric customers, the electricity provider may petition the Marshall County Fiscal Court to request additional withholdings. The Marshall County Fiscal Court may agree to additional withholdings if it determines that the 3% retainage will not provide full compensation

11

> after reviewing the electricity provider's petition and any supporting evidence submitted in support of the petition. For purposes of this Ordinance, "withholdings" means those fee monies collected by an electricity provider on active electric meters pursuant to Section One of this Ordinance.

[DN 18-5 at 3-5].

### iii.   Count 12

The Court considers Plaintiffs' claims in reverse order. In count 12, Plaintiffs seek declaratory judgment that the ordinance is unenforceable because it violates the version of KRS 67.077 in effect at the time the ordinance was passed. [DN 10 at 36]. The statute required ordinances to be published by summary prior to their passage, and Plaintiffs contend the ordinance at issue here was not properly published by summary. *Id.* ("Upon information and belief, Defendants published this inadequate and incomplete 'summary' in order to intentionally avoid the public debate that KRS 67.075 seeks to encourage.").

The version of KRS 67.077(2) in effect at the time provided: "No county ordinance shall be passed until it has been published pursuant to KRS Chapter 424. Prior to passage, ordinances may be published by summary." Plaintiffs submit the definition of "summary" in KRS 67.075(2): "'Summary' means a concise written narrative covering the main points of any official statement, certified as to its accuracy by the fiscal court and written in a way calculated to inform the public clearly of its contents." [DN 19 at 33-34].

The parties do not dispute the date of the summary publications or the contents of the summary publications. Thus, the undisputed account of when the summaries were published and what they stated is as follows. The first summary, published on October 22, 2019, stated:

> The second reading of a proposed Ordinance relating to a Fee on Electric Meters to Facilitate Funding of Marshall County 911 will be held on Tuesday, November 12, 2019 at 9:30 a.m. in the Marshall County Fiscal Courtroom. A copy of the proposed ordinance with full text is available for public inspection at the Office of the County Judge/Executive during normal business hours.

12

The second summary, published on November 5, 2019, stated:

> The second reading of a proposed Ordinance relating to a fee on Electric Meters to Facilitate Funding of Marshall County 911 will be held on Tuesday, November 12, 2019 at 9:30 a.m. in the Marshall County Fiscal Courtroom. This ordinance purports to impose a $7.00 fee on electric meters, provides for an administrative withholding by the electric companies, and repeals the prior ordinance addressing this matter. A copy of the proposed ordinance with full text available is available for public inspection at the Office of the County Judge/Executive during normal business hours.

[DN 19 at 34; DN 20 at 7].

Plaintiffs allege that the summary publications "failed to properly inform Marshall County citizens of the substance of the Ordinance." [DN 19 at 34]. Specifically, Plaintiffs allege that the summary publications did not make clear that Marshall County citizens would be responsible for paying the new fee. *Id.* Plaintiffs contend, "[t]he main point of the Ordinance is that Defendants were imposing a $7.00/meter monthly fee on Marshall County's citizens, yet this fact was intentionally obfuscated in the summary publications." *Id.* at 35 (citation omitted). Plaintiffs also take issue with the fact that the title of the ordinance is "An Ordinance Establishing and Imposing a Fee on Electric Meters/Bills," but the word "bill" is not in either summary publication. *Id.*

Defendants respond that the summary publication requirement of KRS 67.077 "was directory, not mandatory, and could be satisfied by substantial compliance." [DN 20 at 24 (citing *Knox County v. Hammons*, 129 S.W.3d 839, 843 (Ky. 2004))]. Defendants further rely on *Hammons*, arguing that the Kentucky Supreme Court there upheld an ordinance where the corresponding summary publication stated that the fiscal court was "proposing to enact and impose [an] Occupational License Fee Tax of 1% based on income and net profits derived from the exercise of activities necessary to carry on business, trades, occupations and professions in Knox County, Kentucky." *Id.* (citing *Hammons*, 129 S.W.3d at 843). Defendants argue that the summary

13

publications here and the summary publication in *Hammons* are alike because in both cases, the summaries disclosed the amount of the charge imposed—one a tax and the other a fee—without specifying who was responsible for paying it. *Id.* Indeed, in *Hammons*, the Kentucky Supreme Court upheld the ordinance at issue, finding that the summary "sufficiently covers the main points of the ordinance and clearly informs the public of its nature." *Hammons*, 129 S.W.3d at 844. The court further stated, "[t]he only provisions of the complete ordinance that were not included in the summary concern the method of collection and enforcement of the tax; these provisions cannot reasonably be considered 'main points' of the ordinance." *Id.* Defendants contend:

> Presumably, Knox County citizens were expected to know that an occupational license fee tax based on the income and net profits generated by business activities would be paid by the businesses conducting those activities. Likewise, it is reasonable to expect Marshall County citizens to understand that a fee on electric meters administered by the electric companies would be paid by the customers to whom those meters are assigned.

[DN 20 at 25].

In their reply, Plaintiffs argue that Defendants ignore the critical fact that electric meters are personal property of electric utilities. [DN 21 at 17]. As such, Plaintiffs contend, Marshall County citizens could not have understood upon reading the summary publications that they would incur the fee placed on electric meters as opposed to the electricity providers incurring the fee. *Id.* at 17-18 ("[B]ecause electric meters are owned by the utilities, the summary publication <u>incorrectly</u> notified the public that a fee was being placed on property owned by electric utilities. It is not reasonable to expect Marshall County's citizens to understand that publishing notice of a fee being placed on a third-party's property means that the Fiscal Court imposed a fee on every citizen in Marshall County."). Presumably, Plaintiffs are attempting to draw a distinction between this case and *Hammons* by suggesting that although the Knox County citizens in *Hammons* would

14

have understood upon reading the summary publication that they may be responsible for a "tax," the Marshall County citizens here could not have understood upon reading the summary publications that they may be responsible for a fee on their electric meter. *Id.* at 17 ("[T]he summary publications attempted to obfuscate that Defendants were essentially "raising taxes" by placing a $7.00/monthly fee on Marshall County's citizens.").

Plaintiffs also briefly argue in their motion for summary judgment that the proposed ordinance that was available for review in the County Judge Executive's Office was "drafted in a way that was misleading to a citizen who sought to review the Ordinance in full." [DN 19 at 35]. Plaintiffs state, "Defendants provided the full proposed Ordinance for the public's review in 'redline,' which showed some but not all of the changes that had been made to the prior Ordinance." *Id.* However, the Court does not see that this issue bears on Plaintiffs' claim that the substance of the summary publications violated KRS 67.077(2). In Count 12 of the amended complaint, Plaintiffs challenge the content of the summary publications as required under KRS 67.077(2), not the content of the what was available for review in the County Judge Executive's Office. [DN 10 at 36]. Thus, the issue Plaintiffs take with the full-text version of the ordinance that was available for inquiring citizens' review does not bear on resolution of the Count 12 claim.

As is relevant to Defendants' abstention arguments, the Court does not find that the state law on the Count 12 claim is unclear or unsettled. The *Hammons* opinion is authoritative and clear on the state law issues raised here. Consequently, there is not a state law issue under Count 12 of Plaintiffs' amended complaint that requires this Court's abstention.

Second, Plaintiffs are not entitled to summary judgment. Like in *Hammons*, the summary publications here provided a concise narrative on the main points of the ordinance, and Marshall County citizens would have reasonably understood that they would be responsible for the fee

15

imposed if the ordinance passed. Stating that the ordinance "purports to impose a $7.00 fee on electric meters" adequately covers what the Plaintiffs describe as the main point of the ordinance—"that Defendants were imposing a $7.00/meter monthly fee on Marshall County's citizens." [DN 19 at 34; DN 20 at 7; DN 19 at 35]. The motion for summary judgment on Count 12 is denied.

### iv.   Count 11

In count 11, Plaintiffs seek declaratory judgment that the ordinance is unenforceable because it is vague and uncertain. [DN 10 at 34-35]. Plaintiffs submit that the ordinance is vague and uncertain because it "(1) places conflicting obligations on electricity providers in Marshall County such that Plaintiffs cannot determine with reasonable certainty the administrative fee authorized by the statute; and (2) fails to provide direction to Plaintiff's regarding the collection activity that is authorized and/or required." *Id.* at 35.

As to the claim regarding conflicting responsibilities, Plaintiffs complain that Section Two of the ordinance directs the electric providers to remit the collected fees to the Marshall County Treasurer, but Section Three of the ordinance permits the electric providers to retain 3% of the collected fees to compensate them for the costs associated with collecting the fee. [DN 19 at 32-33]. Therefore, Plaintiffs argue, the ordinance places conflicting obligations on the electric providers to remit all amounts to the Marshall County Treasurer and at the same time withhold certain amounts for their own compensation. *Id.* at 33. As to the claim that Plaintiffs' duties under the ordinance are unclear, Plaintiffs complain that the ordinance does not make clear how to collect the fee, whether through customers' electric bills or otherwise, and "there are no instructions to Plaintiffs if a citizen refuses to pay the 911 emergency service fee." *Id.* Plaintiffs cite *Bluegrass Boarding & Training Kennels v. Jefferson Cnty. Fiscal Ct.*, 26 S.W.3d 801, 805 (Ky. Ct. App.

2000), for its holding that "[a] statute is impermissibly vague when a person disposed to obey the law could not determine with reasonable certainty what conduct is prohibited."

Defendants respond by citing the same proposition from the Kentucky Court of Appeals in *Bluegrass Boarding*. [DN 20 at 22]. As regards Plaintiffs' claim alleging conflicting responsibilities to remit the fees while at the same time retaining a portion of the fees, Defendants analogize to the facts of *Bluegrass Boarding*, where the Court upheld the ordinance at issue. *Id.* at 23-24. In *Bluegrass Boarding*, the appellants alleged that two sections of an ordinance conflicted with one another, and when read together, rendered the ordinance unconstitutionally vague. *Bluegrass Boarding*, 26 S.W.3d at 804. Specifically, Section (L) of the ordinance required a pet to have a license to be boarded, and Section (M) required kennels to present owners of unlicensed animals a license application. *Id.* The court stated:

> We believe the ordinance is not impermissibly vague, as a pet owner can readily determine from sections (L) and (M) that his pet is required to have a license to be boarded and is on notice that he will receive a warning citation should his unlicensed pet be discovered during an Animal Control inspection. Similarly, the kennel owner can determine from section (M) that he is not prohibited from boarding an unlicensed pet, but has a duty to present an unlicensed pet owner with a license application, advise the pet owner of the licensing requirement, and provide Animal Control with the name and address of the pet owner upon request.

*Id.* Defendants argue that the same is true here, as "electric utilities can readily determine from Sections Two and Three of the Ordinance in this case that they are required to remit to the Marshall County Treasurer the 911 fees collected except the 3% they are entitled to retain as compensation for their administration of the fee collection." [DN 20 at 24].

As to Plaintiffs' claim that their collection duties are unclear because the ordinance does not make clear how Plaintiffs are to collect the fee, Defendants argue that the ordinance is clear that the fee is expected to be appended to customers' bills. *Id.* at 22-23. Defendants point to one

of the "whereas" clauses preceding the main text of the ordinance, which provides that "the Marshall County Fiscal Court desires for those electricity providers to have an ability to receive reasonable compensation for their efforts in collecting fees on electric meters/bills for Marshall County 911." [DN 18-5 at 3]. Defendants also point to the main text of the ordinance, in Section Three, which provides that the electric providers may request additional withholdings above the 3% retainage amount if that retainage amount "will not fully compensate the electricity provider for collecting the fee in accordance with its normal, customary billing practices and cycles utilized to collect amounts owed by its electric customers." *Id.* at 4. With respect to Plaintiffs' claim that the ordinance is vague and uncertain because they are not directed what to do in the event that a customer does not pay the fee, Defendants argue that by "remaining silent as to any duty to pursue or punish customers who do not pay the fee, the Ordinance is clear that no further collection or enforcement efforts are required." *Id.* at 23.

Plaintiffs reply that Defendants' reliance on the whereas clause preceding the main text of the ordinance is erroneous because such a clause cannot be used to enlarge an ordinance's scope or operation. [DN 21 at 14-15 (citing *Milwaukee Dist. Council 48 v. Milwaukee Cnty.*, 924 N.W.2d 153, 161-62 (Wis. 2019))]. Further, Plaintiffs contend that the Section Three language to which Defendants refer relates to Plaintiffs' compensation, not to their obligation to place the 911 fee on customers' electric bills. *Id.* at 15-16. Thus, Plaintiffs argue, the language does not shed light on what collection activities are required. *Id.* at 16. Finally, Plaintiffs argue that in contending that the ordinance's silence on what is required when a customer fails to pay the fee amounts to clarity that no further collection activities are required, Defendants invoke a principle of statutory construction opposite to the principle of statutory construction Defendants invoke with respect to other claims in this action. *Id.*

18

Again here, the state law on the Count 11 issues is sufficiently clear such that abstention is not warranted. Moreover, Plaintiffs are not entitled to summary judgment on this claim either. The parties agree that the rule stated in *Bluegrass Boarding* applies, and the ordinance is impermissibly vague if "a person disposed to obey the law could not determine with reasonable certainty what conduct is prohibited." 26 S.W.3d at 805. Applying this rule, the language of the ordinance provides a person disposed to obey the law with reasonable certainty as to the conduct prohibited and the conduct expected. The Court agrees with Defendants that the "electric utilities can readily determine from Sections Two and Three of the Ordinance in this case that they are required to remit to the Marshall County Treasurer the 911 fees collected except the 3% they are entitled to retain as compensation for their administration of the fee collection." [DN 20 at 24]. Additionally, it is apparent to a reasonable certainty upon reading the ordinance that the electric providers are expected to collect the fee through their normal billing practices. Furthermore, the Court does not find that silence as to what is required if a customer does not pay the fee renders the ordinance impermissibly vague, either. A person disposed to obey the law can determine with reasonable certainty upon reading the ordinance that no further action is required. The ordinance is not a model of precision, but an ordinance need not "spell out in minute detail the administrative procedures for enforcement of its provisions." *Batten v. Hambly*, 400 S.W.2d 683, 684 (Ky. 1966). Therefore, the Court finds that the ordinance is not impermissibly vague and uncertain, and consequently, summary judgment is denied as to Count 11.

### v.  Count 10

In count 10, Plaintiffs seek declaratory judgment that the ordinance is unenforceable under KRS 278.040 because the statute provides the Kentucky Public Service Commission "exclusive jurisdiction over the regulation of *rates and service of utilities*," and the ordinance seeks to regulate

both rates and services of electricity by imposing a fee on electric meters, thus infringing on the Public Service Commission's exclusive jurisdiction. [DN 10 at 33-34].

Plaintiffs claim that they are entitled to summary judgment pursuant *Ky. CATV Ass'n v. Volz*, 675 S.W.2d 393 (Ky. Ct. App. 1983). [DN 19 at 30-31]. In *Volz*, the Kentucky Court of Appeals considered whether the Kentucky Public Service Commission had the authority to regulate the *rates* that utilities charged cable television operators to attach to their utility poles, as such attachment constituted a *service* within the meaning of KRS 278.010. *Id.* at 396. The Court held that the Public Service Commission did have authority to regulate the rates charged for the service of attaching to the utility poles. *Id.* Plaintiffs argue that just as the Public Service Commission had the authority to regulate rates charged for attachment to utility poles, the Public Service Commission also has the exclusive authority to regulate rates charged in connection with electric meters. [DN 19 at 30-31]. Plaintiffs state, "the Ordinance seeks to force JPE to provide the service of collecting 911 emergency service fees, which necessarily requires the use of JPE's facilities." *Id.* at 30. Plaintiffs argue, "not only does the Ordinance seek to invade the jurisdiction of the PSC by regulating the 'services' of JPE – forcing JPE to provide the services of collection agent – it also affects the PSC's exclusive jurisdiction over JPE's rates because the failure to fully compensate JPE for performing those services will necessarily affect JPE's rates." *Id.* at 30-31.

Defendants respond that Plaintiffs' argument overlooks the power reserved to counties in KRS 278.040(2). [DN 20 at 19-20]. Defendants quote the statute: "The commission shall have exclusive jurisdiction over the regulation of rates and service of utilities, *but with that exception nothing in this chapter is intended to limit or restrict the police jurisdiction, contract rights or powers of cities or political subdivisions*." KRS 278.040(2) (emphasis added). Accordingly, Defendants argue that the provision places an express limitation on the exclusive jurisdiction of

the Public Service Commission, which must yield to the police powers of the Commonwealth's cities and political subdivisions. [DN 20 at 20]. Hence, Defendants contend that the Public Service Commission's jurisdiction over regulation of rates and services of utilities must yield to Marshall County's authority, as a political subdivision of the Commonwealth, to enact ordinances requiring utilities to collect fees for funding 911 emergency services under KRS 65.760 and KRS 67.083. Defendants also argue that even if Marshall County did not have authority to enact the ordinance at issue, the ordinance does not regulate rates or services of utilities. *Id.* at 21-22. Moreover, Defendants contend, the 911 fee established in the ordinance does not affect the electric providers' transmission of electricity, therefore not affecting the rates charged to customers for services rendered by the utility within the meaning of KRS 278.010(12). *Id.*

In their reply, Plaintiffs reiterate that the "services" the Kentucky Public Service Commission has jurisdiction to regulate includes the use of the electric providers' facilities, including, for example, use of the electricity providers' computers and printers for processing electric bills. [DN 21 at 13-14]. Plaintiffs also argue that the cases on which Defendants rely are distinguishable from the case at bar. *Id.* at 14. Finally, Plaintiffs contend that the facts of this case are like the facts of *Smith v. Southern Bell Telephone & Telegraph Company*, 104 S.W.2d 961 (Ky. 1937), cited in *Benzinger v. Union Light, Heat & Power Co.*, 170 S.W.2d 38 (Ky. 1943). *Id.* Plaintiffs argue that like the *Smith* case, this case involves no questions related to § 163 of the Kentucky Constitution, so "the questions are within the exclusive jurisdiction of the [Public Service Commission]." *Id.* Plaintiffs' apparent argument is that in both *Smith* and this case, there was no exercise of "the police jurisdiction, contract rights or powers of cities or political subdivisions" in issue that could override the Public Service Commission's authority to regulate utility rates and services.

As with Counts 11 and 12, the Kentucky law on this claim is sufficiently clear such that abstention is not warranted. And again, Plaintiffs are not entitled to summary judgment. This Court, previously faced with the question of the extent of the Kentucky Public Service Commission's jurisdiction under KRS 28.040(2), found that "*Volz* provides no guidance on the issues of whether and to what extent the Public Service Commission's exclusive jurisdiction must yield to a city's police powers." *BellSouth Telecomms., LLC v. Louisville/Jefferson Cnty. Metro Gov't*, 275 F. Supp.3d 833, 838 (2017) (citing *Volz*, 675 S.W.2d at 396). Indeed, the *Volz* court was considering the Public Service Commission's authority to regulate the terms of utilities' private agreements, not the Public Service Commission's authority relative to the police powers of cities or political subdivisions. Therefore, Plaintiffs' reliance on *Volz* is unconvincing. Relatedly, Plaintiffs' likening the *Smith* case to this case is equally unconvincing.

The language of KRS 278.040(2) is clear: "The commission shall have exclusive jurisdiction over the regulation of rates and service of utilities, *but with that exception nothing in this chapter is intended to limit or restrict the police jurisdiction, contract rights or powers of cities or political subdivisions*." (emphasis added). As Defendants argue, Kentucky law provides Marshall County, as a political subdivision of the Commonwealth, the authority to enact ordinances requiring utilities to collect fees to fund 911 emergency services. *City of Stanford v. Lincoln County*, 609 S.W.3d 473, 477 (Ky. 2020); KRS 65.760; KRS 67.083. Because the ordinance regulates the collection of fees to fund 911 emergency services, it is within Marshall County's authority to enact the ordinance, which does not impermissibly infringe on the Public Service Commission's authority to regulate the rates and services of utilities. Plaintiffs' motion for summary judgment as to Count 10 is denied.

### vi.   Count 8

In count 8, Plaintiffs seek declaratory judgment that the ordinance is unenforceable under

KRS 65.760(4). [DN 10 at 31-32]. The statute states, in relevant part:

> (4) All revenues raised from any special tax, license, or fee levied under subsection
> (3) of this section shall be expended only as provided in this subsection and only to
> the extent that the expenditure is directly attributable to the establishment,
> operation, or maintenance of a PSAP, the delivery of 911 emergency services, or
> the provision of wireless enhanced 911 services, as follows:
>
>> (a) The hiring of personnel;
>>
>> (b) The following costs for employees . . .
>>
>> (c) Facility costs for the following expenses . . .
>>
>> (d) Training and memberships in professional associations, including . . .
>>
>> (e) Costs for the following equipment shall be allowed to the extent its
>> function is directly attributable to the provision of 911 emergency services,
>> whether on the premises or remotely located . . .
>>
>> (f) Vehicle costs for the following, either as reimbursement to an employee
>> for the use of a private vehicle or direct costs for a vehicle assigned to the
>> agency . . .
>>
>> (g) Costs for the following professional services . . .
>>
>> (h) Costs for public education regarding the proper use of 911 emergency
>> services.

KRS 65.760(4). Plaintiffs argue that the ordinance directs the electric providers to withhold some

of the collected fee, and KRS 65.760(4) "does not allow any portion of the revenues generated by

the 911 fee to be provided to a private entity that is conscripted to act as a collection agent on

behalf of a local government." [DN 10 at 31-32]. Defendants do not dispute that the statute does

not expressly authorize spending 911 emergency services fees to compensate entities collecting

the fees. [DN 20 at 19].

In their motion for summary judgment, Plaintiffs argue, "KRS 65.760 expressly delineates how a local government may spend revenues raised from the 911 fee, and payment to a private citizen forced to act as a collection agent against their will is not one of the authorized expenditures." [DN 19 at 28]. Plaintiffs also argue that Kentucky's General Assembly has expressly provided for fee withholding in other statutes that require certain entities to act as collection agents. *Id.* at 28-29. Therefore, Plaintiffs contend, "it is clear that . . . when the General Assembly intends to authorize a withholding as compensation for services rendered as a collection agent, it specifically says so." *Id.* at 29. Moreover, Plaintiffs argue that in passing KRS 65.760, the General Assembly "failed to include a provision authorizing compensation to an entity acting as a collection agent on behalf of the local government." *Id.*

Defendants respond that Plaintiffs' argument fails because KRS 67.083(1) "expresses its intent 'to provide counties as units of general purpose local government with the necessary latitude and flexibility to provide and finance governmental services within those functional areas as specified in' KRS 67.083(3)." [DN 20 at 19]. Further, Defendants argue that any limitation on the powers granted under KRS 67.083 must be express restrictions. *Id.* Defendants submit, "although KRS 65.760(4) does not expressly authorize the expenditure of 911 fees to compensate collection agents, there is no express restriction prohibiting such an expenditure." *Id.*

Whether KRS 65.760(4) prohibits local governments from assigning a percentage of 911 emergency services fees to the parties collecting the fees for their compensation appears to be a question that has not been addressed in the Kentucky state courts, and neither party here cites any case law addressing the issue. However, just because the Kentucky courts have not addressed the issue does not mean that the statute at issue is unclear or that abstention is warranted.

24

Kentucky law counsels this Court to consider the plain language of the statute. "We must first look to the plain language of the statute to 'ascertain and give effect to the intent of the General Assembly.' Only if the language is unclear do we consider the legislatures' unspoken intent, the statute's purpose, and the broader statutory scheme." *Barnett v. Central Ky. Hauling, LLC*, 617 S.W.3d 339, 341-42 (Ky. 2021) (citations omitted). Here, the Court finds that the plain language of the statute is clear: KRS 65.760(4) only limits how 911 fees may be expended when the fees are collected under subsection (3). *See* KRS 65.760. As the Kentucky Court of Appeals stated in *Lincoln County*, "KRS 65.760 specifically states that the fee can be collected from telephone companies, KRS 65.760(3), but it also states that the fees can come from sources other than telephone companies. KRS 65.760(7)." 609 S.W.3d at 477. Here, the fee collectors are electric companies, not telephone companies, so the fees may be collected by electricity providers pursuant to subsection (7) of the statute.[1] As such, KRS 65.760(4)'s limitations on how the fees may be spent do not apply, and the ordinance does not violate KRS 65.760(4). Plaintiffs' motion for summary judgment as to Count 8 of the Amended Complaint is denied.

### vii.   Count 7

In count 7, Plaintiffs seek declaratory judgment that the ordinance is unenforceable under KRS 65.760(3) because the statute does not give a local government "the right to require an electric utility to collect and remit a 911 fee to a local government." [DN 10 at 29-31]. Plaintiffs argue that the statute requires only private commercial telephone services, owners of dispersed private

---

[1] The Court recognizes that in one of the whereas clauses that precedes the main text of the ordinance, Defendants quote language from subsection (3) of KRS 65.760. [See DN 18-5 at 3]. It appears that Defendants included this language to generally explain a local government's statutory authority to collect fees to establish and operate 911 emergency services, and it is evident that those general principles apply to subsection (7) of the statute as well, though such clarifying language is not included there. *See Lincoln County*, 609 S.W.3d at 477.

telephone systems (DPTSs), and providers of interconnected VoIP local and 911 services to subscribers for compensation to collect and remit charges, taxes, licenses, or fees to a local government for the establishment or operation of 911 emergency services. *Id.*

Plaintiffs argue in their motion for summary judgment that even though KRS 65.760(7) provides that "[n]othing in this section shall preclude other means of establishing or funding a 911 emergency service within any local area or exchange," that language does not permit local governments to require entities other than the telecommunications providers enumerated in subsection (3) of the statute to collect 911 fees. [DN 19 at 19-22]. Plaintiffs argue that Kentucky's General Assembly amended KRS 65.760 to specifically require certain telecommunications providers to act as collection agents despite the existence of subsection (7). *Id.* Plaintiffs contend, "if the General Assembly had already granted a local government the ability to require any private citizen to collect and remit 911 fees through passage of KRS 65.760(7) . . . it would have been completely unnecessary for the General Assembly to amend KRS 65.760 to add [telephone utilities] as entities required to collect and remit 911 fees." *Id.* at 22. Defendants respond, "the equally likely purpose of the added specificity was to require increasingly common telecommunications providers to remit fees in the same manner as exchange-line providers without requiring counties to amend existing ordinances providing for landline fees to fund their 911 services." [DN 20 at 17-18].

Plaintiffs also argue that this Court should not consider the Kentucky Court of Appeals opinion in *Lincoln County* to be persuasive authority, and the court's holding that "fees to fund 911 services . . . can come from sources other than telephone companies" is wrong. [DN 19 at 22-23]. Plaintiffs contend that the court in *Lincoln County* misunderstood the purpose of the fees levied under KRS 65.760 and overstated the plain language of KRS 65.760(7). *Id.* at 22-28.

26

Specifically, Plaintiffs argue that the *Lincoln County* court did not understand that KRS 65.760 grants local governments the authority to collect fees to fund the operations of 911 telecommunications services, not fees to fund hospitals, ambulance services, police departments, and fire departments generally. *Id.* at 23-25. Plaintiffs also contend that the *Lincoln County* court's construction of KRS 65.760(7) is overbroad and effectively unconstitutional, as it would "allow a county government to require any private citizen to act as a collection agent." *Id.* at 26.

Defendants contest these points, arguing that *Lincoln County* "was entirely consistent with, and certainly not in conflict with, KRS 65.760." [DN 20 at 17]. Defendants further submit that Plaintiffs' interpretation would render KRS 65.760 meaningless, and "[t]he only limitation on counties' ability to adopt means of funding 911 emergency services under KRS 65.760 is that it not conflict with the statutes or Constitution of Kentucky." *Id.* at 17.

Plaintiffs reply, reincorporating their original arguments and alleging that Defendants' argument as to rendering KRS 65.760 meaningless is "intellectually dishonest," as Plaintiffs' only argument is that the electricity providers as private entities cannot be required to collect the fees against their will. [DN 21 at 9-11]. Plaintiffs also argue that Defendants' construction of KRS 65.760(7) entails "absolute power to require any private citizen to act as a government collection agent." *Id.* at 11. Plaintiffs state, "Plaintiffs seek a ruling ensuring that KRS 65.760(7) cannot be used to exert power not specifically delegated by the General Assembly to force any private citizen, including electric utilities, to perform labor-intensive services against that citizen's will." *Id.* at 12.

Despite the range of the parties' arguments on this claim, the specific question here is whether the ordinance violates KRS 65.760(3) in requiring electric utilities to collect and remit a 911 fee to the local government, although subsection (3) of the statute only requires

telecommunications providers to act as 911 emergency service fee collection agents. The Court finds that the ordinance does not violate KRS 65.760(3).

First, the Kentucky Court of Appeals has at least twice upheld fiscal court ordinances requiring entities other than telecommunications providers to collect fees for 911 emergency services. *Lincoln County*, 609 S.W.3d at 477 (upholding fiscal court ordinance requiring water providers to collect and remit 911 emergency services fee); *City of Lancaster v. Garrard County*, No. 2013–CA–000716–MR, 2017 WL 3446983, at *3 (Ky. Ct. App. 2017) (upholding fiscal court ordinance placing fee on water meters and requiring fee to be collected and remitted to local government by water utilities). In *Lincoln County*, the Kentucky Court of Appeals specifically stated: "KRS 65.760 specifically states that the fee can be collected from telephone companies, KRS 65.760(3), but it also states that the fees can come from sources other than telephone companies. KRS 65.760(7)." 609 S.W.3d at 477. Accordingly, Plaintiffs' contention that Marshall County can require *only* telecommunications providers to collect 911 emergency services fees because of its authority to do so under KRS 65.760(3) must fail.

Second, this Court will not depart from the Kentucky Court of Appeals opinion in *Lincoln County*. Contrary to Plaintiffs' position, this Court does not find that the *Lincoln County* court misunderstood the relevant statutes. The Kentucky Court of Appeals undertook a straightforward but keen analysis of KRS 65.760 and KRS 67.083 in upholding the fiscal court ordinance in *Lincoln County*, and this Court is bound by that decision without "persuasive data" that the Kentucky Supreme Court would find otherwise. *Puckett*, 889 F.2d at 1485. Even if, as Plaintiffs argue, the Kentucky Supreme Court would find KRS 65.760(7) unconstitutionally expansive, the constitutionality of subsection (7) is not the issue before the Court on this claim, nor was it the

issue before the court in *Lincoln County*.[2] The issue here is whether the ordinance violates KRS 65.760(3). [DN 10 at 29-31]. The Court holds that it does not, and Plaintiffs have not presented this Court with persuasive data that warrants a departure from the Kentucky Court of Appeals decision in *Lincoln County*. Moreover, the Court finds that the Kentucky state law here is sufficiently clear such that abstention is not warranted. Plaintiffs' motion for summary judgment as to Count 7 is denied.

### viii.   Count 6

Finally, in count 6, Plaintiffs seek declaratory judgment that the ordinance is unenforceable under KRS 67.083, arguing that the statute restricts fiscal courts from regulating the use of electricity, and the ordinance, Plaintiffs argue, "seeks to govern the use of electricity, in express violation of the powers delegated to it in KRS 67.083." [DN 10 at 28-29].

In their motion for summary judgment, Plaintiffs contend: "Defendants do not have the power to pass an ordinance that seeks to place a condition on the use of electricity by Marshall County's citizens. Kentucky statute explicitly provides that '[t]he fiscal court shall not exercise executive authority except as specifically assigned by statute.'" [DN 19 at 15 (citing KRS 67.080(3)]. Plaintiffs further argue that KRS 67.083 prohibits Kentucky fiscal courts from enacting

---

[2] A Kentucky Supreme Court holding that subsection (7) of KRS 65.760 is unconstitutional would likely render the ordinance invalid. However, such a holding would not invalidate the *Lincoln County* court's holding that KRS 65.760 as currently written provides that 911 emergency services fees may be collected from entities other than telecommunications providers under subsection (7). Though related, the questions of whether entities other than telecommunications providers can be required to collect 911 emergency services fees under KRS 65.760 and whether subsection (7) is constitutional are distinct. In fact, the Kentucky Supreme Court, or any other court, would likely have to find that entities other than telecommunications providers can be required under subsection (7) to collect the 911 emergency services fees—thereby confirming the *Lincoln County* court's holding—before reaching the question of the provision's constitutionality. Thus, Plaintiffs' argument regarding the constitutionality of subsection (7) does not directly affect the question before this Court on Count 7, and it does not convince the Court that the Kentucky Court of Appeals wrongly interpreted the statute such that this Court should depart from the holding in *Lincoln County*.

ordinances involving electricity, and the ordinance at issue here is an ordinance involving electricity. Plaintiffs cite the following provisions of KRS 67.083:

> (3) . . . Except as otherwise provided by statute or the Kentucky Constitution, the fiscal court of any county may enact ordinances, [and] issue regulations . . . in performance of the following public functions: . . .
>
>> (r) Provision of water and sewage and garbage disposal service but not gas or electricity . . .

[DN 19 at 16 (citing KRS 67.083(3)(r))]. Plaintiffs further argue:

> Here, the Ordinance attempts to regulate the use of electricity by placing a condition on a Marshall County citizen's use of electricity – payment of a $7.00 monthly fee. In the process, Defendants further seek to regulate electric utilities by forcing the electric utilities to provide the services of a collection agent, which Defendants also do not have the power to do. *See* KRS 278.040; KRS 67.083(3)(r).

[DN 19 at 17]. In short, Plaintiffs contend that because KRS 67.083(3)(r) prohibits fiscal courts from enacting an ordinance related to the provision of electricity, the ordinance is unenforceable.

Defendants respond that the plaintiffs' position "ignores the plain language of the applicable statutes and is contrary to Kentucky law." [DN 20 at 12]. Defendants contend that under KRS 67.083 and KRS 65.760, the Marshall County Fiscal Court has the authority to enact ordinances "that establish fees and collection mechanisms to fund 911 services." *Id.* Further, Defendants argue that the plain language of KRS 67.083(3)(r) only prohibits fiscal court ordinances "in performance of" the "provision of" electricity, and here, the ordinance only "enlist[s] the assistance of electric service providers to collect 911 fees." *Id.* at 13.

The Court understands the key issue here to be whether the ordinance seeks to regulate the use or provision of electricity under KRS 67.083(3)(r). Plaintiffs argue that the ordinance "attempts to govern the use of electricity by placing a condition upon the receipt of electricity in Marshall County; it also attempts to regulate electric utilities by forcing them to provide the services of a

collection agent." [DN 21 at 8]. Defendants argue that the ordinance is merely related to the provision of electricity, and KRS 67.083(3)(r) does not prohibit such regulation.

Neither party has provided Kentucky case law on this specific issue, and the Court has found none. Although Plaintiffs cite three Kentucky Attorney General Opinions on related issues, they are not binding on this Court. [*See* DN 19 at 16-18; DN 20 at 14, n.4 (citing *Williams v. City of London*, 252 F. Supp. 2d 388, 395 (E.D. Ky. 2003); *Carter v. Smith*, 366 S.W.3d 414, 420, n.2 (Ky. 2012)). The first Kentucky Attorney General Opinion that Plaintiffs rely on, Kentucky OAG 79-397, provided that a fiscal court could not expend funds to upgrade a privately owned natural gas facility, primarily because "there is no statutory authority for a fiscal court's declaring the maintenance of a natural gas facility in good order to be a public purpose." 1979 WL 32822, at *1 (July 25, 1979). The Opinion also stated, "[i]n fact, KRS 67.083(3)(r) expressly prohibits enacting ordinances involving gas." *Id.* Here, though, fiscal courts do have the statutory authority to collect fees for 911 emergency services. *See, e.g., Lincoln County*, 609 S.W.3d at 477. Further, the Opinion only mentions KRS 67.083(3)(r) in passing, and the operation of subsection (r) as relevant here is not what the Opinion considered. In short, Kentucky OAG 79-397 is not on point as to the issue presented in this case.

Plaintiffs also rely on Kentucky OAG 02-001, 2002 WL 597401 (Feb. 7, 2002), quoting its statement that "it is clear that fiscal courts may generally regulate water, sewer and cable television services in the county, but are restricted from governing the use of gas and electricity." *Id.* at *4. Here, the Court agrees with Defendants that the Opinion's finding that a fiscal court could not *regulate* the *use* of gas and electricity does not counsel that the ordinance here is invalid, because the ordinance here is not attempting to regulate the *use* of electricity. [DN 20 at 14].

31

Finally, Plaintiffs rely on Kentucky OAG 74-528,[3] but as even Plaintiffs acknowledge, the question presented there centered on the construction of other state statutes that are not in issue here. [DN 19 at 18]. It does not address a fiscal court's authority under KRS 67.083(3)(r). [DN 19-2]. Thus, Plaintiffs' reliance on Kentucky OAG 74-528 is unpersuasive.

As stated above, when construing a state statute, "[w]e must first look to the plain language of the statute to 'ascertain and give effect to the intent of the General Assembly.' Only if the language is unclear do we consider the legislatures' unspoken intent, the statute's purpose, and the broader statutory scheme." *Barnett*, 617 S.W.3d at 341-42. "Where there is no ambiguity in a statute, there is no need to resort to the rules of statutory construction in interpreting it. The words of the statute are simply accorded their commonly understood meaning." *Stewart v. Estate of Cooper*, 102 S.W.3d 913, 915-16 (Ky. 2003) (quoting *Regional Jail Authority v. Tackett*, 770 S.W.2d 225, 229 (Ky. 1989)). "A fundamental canon of statutory [and regulatory] construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Lee v. Haney*, 517 S.W.3d 500, 503-04 (Ky. Ct. App. 2017) (quoting *Rosen v. Commonwealth, Pub. Prot. Cabinet, Dept. of Fin. Inst.*, 451 S.W.3d 669, 674 (Ky. Ct. App. 2014)) (brackets in original). Kentucky courts may determine the common meaning of words in a statute by reference to dictionary definitions. *Jefferson Cnty. Bd. of Educ. v. Fell*, 391 S.W.3d 713, 719 (Ky. 2012) (collecting cases); *Dep't of Revenue, Fin., & Educ. Cabinet v. Shinin' B. Trailer Sales, LLC*, 471 S.W.3d 309, 311-12 (Ky. Ct. App. 2015)

The Court finds that the pertinent language of KRS 67.083(3)(r) is clear. The statute provides, in relevant part:

---

[3] DN 19-2 (Exhibit B).

(1) It is the purpose of this section to provide counties as units of general purpose local government with the necessary latitude and flexibility to provide and finance various governmental services within those functional areas specified in subsection (3) of this section, while the General Assembly retains full authority to prescribe and limit by statute local governmental activities when it deems such action necessary . . .

(3) The fiscal court shall have the power to carry out governmental functions necessary for the operation of the county. Except as otherwise provided by statute or the Kentucky Constitution, the fiscal court of any county may enact ordinances, issue regulations, levy taxes, issue bonds, appropriate funds, and employ personnel in performance of the following public functions . . .

> (r) Provision of water and sewage and garbage disposal service but not gas or electricity; including management of onsite sewage disposal systems[.]

KRS 67.083 (emphasis added). The statute is clear that subsection (3)(r) is meant to limit a fiscal court's authority in regulating the provision of electricity. "Provision," as defined by Merriam-Webster, means, as a noun, "the act or process of providing." Merriam-Webster Online Dictionary (2020); https://www.merriam-webster.com/dictionary/provision (derived from Merriam-Webster's Collegiate Dictionary 11th ed.). The Court agrees, as Defendants argue, that the ordinance here is not seeking to exercise authority over Plaintiffs' act or process of supplying electricity, even though it concerns electric providers and relates to their service. Therefore, the Court denies Plaintiffs' motion for summary judgment on their count 6 claim that the ordinance "seeks to govern the use of electricity, in express violation of the powers delegated to it in KRS 67.083." [DN 10 at 28-29]. Additionally, the Court's finding that the statute is clear on its face counsels against abstention.

### c. Return to Abstention

*Pullman* abstention is not required "if the state law is clear on its face, or if its meaning has already been authoritatively decided by the state courts, or if the constitutional issue would not be avoided or changed no matter how the statute is construed." Wright et al., *supra*, § 4242. The

Court finds the state statutes at issue here are adequately clear or already addressed by state courts. Therefore, the Court will not abstain under *Pullman*.

Under *Burford*, abstention is warranted when (1) a case presents difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the results in the case at bar, or (2) the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern. *Stein*, 672 F. App'x at 571 (quoting *Caudill*, 301 F.3d at 660). "The key question is whether an erroneous federal court decision could impair the state's effort to implement its policy." *Cleveland*, 621 F.3d at 562 (quoting *Saginaw Housing*, 576 F.3d at 626). Though some of the state law issues raised here may be difficult, the Court does not find that the issues require abstention under *Burford*, either. Importantly, the Court sees no coordinated effort by the judicial, legislative, or executive branches in the state of Kentucky to implement any particular policy with regard to Kentucky counties' collection of 911 emergency service fees. Moreover, "[f]ederal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given to them." *Alexander*, 353 F.Supp.3d at 626 (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). After carefully considering the relevant law and the parties' arguments on abstention, addressed above in section III(a), the Court declines to invoke either abstention doctrine.

## IV.    Conclusion

Plaintiffs' Motion for Summary Judgment on the Phase One Claims, DN 19, is **DENIED**. This

opinion passes no judgment on the merits of the Phase Two Claims. **IT IS SO ORDERED**.


*Thomas B. Russell*

**Thomas B. Russell, Senior Judge**
**United States District Court**

April 19, 2021


cc: counsel

35